IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAMONT D. WALKER,

       Plaintiff,

v.

RYAN ARMSON. VICTOR TRIMBLE,
BRIAN NEUMAIER, JEFF VANA,
KIMM JOHNSON, DR. WILLIAM GISWOLD,
DR. JIM THORPE, PAUL KETARKUS and
GLENN BENNETT,

       Defendants.

OPINION AND ORDER

09-cv-756-slc

  In this prisoner civil rights lawsuit, plaintiff Lamomt D. Walker claims that the defendants, all employees at the Columbia Correctional Institution, violated his Eighth Amendment rights by being deliberately indifferent to his serious dental needs. The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1). Plaintiff has filed a motion for summary judgment, countered by two summary judgment motions covering all of the defendants. *See* dkts. 65, 77 and 97.

  There are no genuine issues of material fact. As detailed below, in the fall of 2009, Walker had a large cavity on a lower molar that led to extraction of the tooth, followed by pain, infection and difficulty eating. This all would have been a vividly painful and frustrating experience for Walker, so on a gut level it might make sense for him to lash out at those he perceives to be responsible for his suffering. But a neutral review of what happened establishes that the defendants responded competently and quickly enough to Walker's situation; even if there were some minor snafus along the way, nobody was deliberately indifferent to Walker's serious dental needs. There was no constitutional violation here.

  The following material facts are undisputed for the purposes of deciding the motions for summary judgment:

FACTS

At the times relevant to his lawsuit, plaintiff Lamont D. Walker was incarcerated at the Columbia Correctional Institution (CCI) in Portage, Wisconsin. All of the defendants are employed by CCI: Ryan Armson, Victor Trimble and Bryant Neumaier are correctional officers. Drs. Giswold and Thorpe are dentists. Kimm Johnson, Paul Ketarkus and Jeff Vana are nurses. Glenn Bennett is the CCI Food Services Manager.

On or about September 15, 2009, Walker began experiencing tooth pain. When Walker told C.O. Trimble about his tooth pain, Trimble advised him to put in a dental service request. On September 19, 2009, Walker submitted a request for dental service, stating he was having difficulty eating and that he was in pain.

On September 21, 2009, Walker told C.O. Armson he was experiencing tooth pain and asked him to contact Health Services. Armson did, and Health Services told Armson to advise Walker to submit a Health Service Request.

On September 22, 2009, Dr. Giswold examined Walker and found a large cavity in the pulp of one of Walker's lower molars; the tooth was so decayed that immediate extraction was indicated. So, Dr. Giswold immediately extracted the tooth in a difficult, multistep procedure, x-rayed the extraction site to ensure that he had removed all of the root fragments, stitched up the wound and advised Walker to chew on the other side of his mouth.

Dr. Giswold did not prescribe antibiotics after the procedure. The standard of care for tooth extraction is *not* to use antibiotics after an extraction because of the danger of developing antibiotic resistance.[1] This is true even though it is "highly possible" that an infection will result

---

[1] Antibiotics are prescribed prophylactically only if the patient has a heart valve problem or an artificial joint. Walker did not have either.

after extracting a badly decayed tooth like Walker's molar. The standard of care is to administer antibiotics only if an infection actually develops.

That same day, following this surgical extraction,, Dr. Suliene, CCI's medical doctor, prescribed hydrocodone/Vicodin for Walker, up to four times a day as need for pain. That night C.O. Armson served Walker a regular meal tray. Armson told him to eat what he could.

The next morning, September 23, Walker told C.O. Trimble that he could not eat the hard food on his tray. Trimble told Walker to put in a request slip for dental services. When Nurse Vana came to Walker's cell door to give him his Vicodin, Walker told him that the medication was not helping and was making him sick. Walker requested medical attention. Vana informed a nurse in Health Services. That afternoon, when Nurse Johnson brought Walker's pain medication, Walker complained of severe pain at the extraction site and again complained that the Vicodin was making him sick. Johnson advised Walker to fill out a Health services request. Johnson notified the duty RN of Walker's complaints. That evening, Nurse Ketarkus was notified by Officer Hooper of Walker's complaints. Ketarkus advised Hooper to tell Walker to drink sips water and lie down to counteract his nausea, and to fill out a health services request form if he needed medical attention.

On September 24, 2009, Walker asked C.O. Neumaier to tell the nurse that he needed to see medical staff; Neumaier contacted a nurse at HSU to report that Walker's mouth was sore; the nurse told Neumaier that some soreness was normal with this type of procedure and Neumaier relayed this message back to Walker. Walker submitted health services requests on September 23 and 24, 2009. On September 24, 2009, the Vicodin prescription was discontinued and replaced with a prescription for ibuprofen, which Walker was allowed to keep in his cell to self-administer.

3

On September 25, 2009, Walker was examined by Dr. Thorpe for a followup examination (Dr. Giswold worked only part time for CCI). Dr. Thorpe saw signs of infection at the extraction site, so he prescribed antibiotics, continued Walker's ibuprofen prescription and educated Walker on treating the infected area.

On September 28, 2009, Nurse Kamrath saw Walker about his complaints of pain, flushed the site of the extraction with chlorleudine and packed it with alvage pl.[2] Kamrath noted that Walker was suffering from pain at the extraction site consistent with the procedure he underwent.

Also on September 25, Walker submitted a dental services request for soft food, but Nurse Kamrath did not receive this request until September 28, 2009. Kamrath ordered a soft food diet for Walker through October 5. On October 1, 2009, Walker filed a complaint that the kitchen still was giving him solid foods on a soft food tray and telling the correctional officers that it was a soft diet. A soft diet may be placed on a regular meal tray if the meal meets the criteria for the Department of Corrections Diet Manual Soft Diet. Bennett does not personally prepare soft diet trays. If he had been advised that Walker was not receiving a soft diet during the time covered by the order, he would have corrected the error.

On October 2, 2009, Dr. Giswold saw Walker about his concerns about his diet. Giswold noted that extraction area was sore and swollen because of contact with an upper wisdom tooth that might need to be removed. Dr. Giswold advised Walker to chew his food on the other side of his mouth to decrease pain at the extraction site.

---

[2] Defendants do not explain what "alvage pl" is; I assume it is some sort of wound dressing.

Walker's soft-food diet order expired on October 5, 2009. On October 8, 2009, Walker saw Nurse Kamrath for a followup appointment and she extended Walker's soft-food diet order through October 15, 2009.

On October 8, 2009, Dr. Thorpe also saw Walker and refilled his antibiotic prescription.

## OPINION

### A. Summary Judgment Standard

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material facts exists, the court must construe all facts in favor of the nonmoving party. *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007). Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Eighth Amendment Claim

Plaintiff claims that defendants were deliberately indifferent to his serious dental need. The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs or suffering. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

"Serious medical needs" include (1) conditions that are life-threatening or that carry risk of permanent serious impairment if left untreated; (2) those in which the deliberately indifferent withholding of medical care results in needless pain and suffering; and/or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73. (7th Cir. 1997). It is undisputed for purposes of summary judgment that Walker's dental issues were a serious medical need.

A prison official acts with deliberate indifference if he or she "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)). A plaintiff alleging deliberate indifference who has received medical care addressing his health care needs, must show that the treatment he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotation omitted). Mere disagreement with a doctor's medical judgment, *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007), inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference. *Washington v. LaPorte County Sheriff's Dept.*, 306 F.3d 515 (7th Cir. 2002). A medical professional's treatment decision rises to the level of deliberate indifference only when it is a substantial departure from accepted professional judgment, practice or standards. *Sanville v. McCaughty*, 266 F. 3d 724, 734 (7th Cir. 2001).

Against this legal template, the court examines whether any defendant was deliberately indifferent to Walker's dental issues:

1. The Dentists

Walker first requested dental services for tooth pain on September 19, 2009. Dr. Giswold saw him September 22, 2009, recognized a serious situation and immediately extracted Walker's tooth in a difficult operation. As was his standard operating procedure, Dr. Giswold did not prescribe antibiotics following the operation. Walker disagrees with this decision because he subsequently got an infection. However a mere disagreement with a doctor's medical judgment does not support a deliberate indifference claim. *Edwards*, 478 F. 3d at 831.

Dr. Giswold and Dr. Thorpe have submitted affidavits asserting that even though infections are "highly possible"[3] following an extraction of this sort, the standard of care nonetheless militates *against* prescribing antibiotics, for logical reasons. Walker has submitted no evidence to dispute these affidavits. As a result Walker has not raised a factual dispute whether Dr. Giswold's decision not to prescribe antibiotics at the time he extracted Walker's tooth was a substantial departure from accepted professional judgment. The undisputed evidence establishes that there is a standard procedure in the field for handling the possibility of post-extraction infection, and that Dr. Giswold followed that procedure.

Walker also contends that Drs. Giswold and Thorpe were deliberately indifferent to his serious medical need by not ordering a soft diet for him before September 28, 2009. Walker seems to believe that if he has been given a soft diet more quickly, then his extraction site would not have become infected. Walker fails, however, to present any medical evidence that supports this argument; he's just speculating. Further, there is no evidence that the failure to order a soft diet until September 28 was a substantial departure from accepted professional judgment.

---

[3] I infer that a "high possibility" is somewhere near but less than a likelihood or a probability, that is, close to but under 50%.

7

It is undisputed that the dentists treated Walker's monstrous cavity quickly. Within three days after Walker complained of tooth pain, Dr. Giswold diagnosed the problem, extracted Walker's rotten tooth, x-rayed his jaw and stitched up the extraction site. Dr. Suliene immediately prescribed A-list painkillers for Walker. Three days later, Dr. Thorpe saw Walker after he complained of pain and immediately prescribed antibiotics because the extraction site had become infected. Each dentist had another followup visit with Walker in early October. The timing and content of these interactions with Walker establish that Drs. Giswold and Thorpe provided Walker with treatment consistent with professional dental care in the community as a whole. They were not deliberately indifferent to Walker's serious dental needs. Therefore, defendants Giswold and Thorpe are entitled to judgment in their favor.

2. Food Services Administrator Bennett

Walker contends that defendant Bennett, the food services administrator, was deliberately indifferent to Walker's serious medical needs because Bennett did not insure that Walker received the soft diet ordered by HSU. It is undisputed that Walker was provided a soft diet beginning on September 30. The fact that he did not receive a soft diet the same day it was ordered was because the order did not even get to the food service administrator until September 30. Walker has presented no evidence that Bennett caused this delay or that the delay amounted to deliberate indifference.

Next, even if this court were to infer that for some meals, the kitchen did not actually provide Walker with a soft diet, there is no proof that Bennett even was aware of this, let alone that he directed it or condoned it. Indeed, there is no proof that *anyone* in the kitchen intentionally or recklessly did anything to deprive Walker of the soft diet that had been ordered.

8

The worst scenario inferrable from the facts is that there might have been some miscommunication or some mistakes about what actually ended up on Walker's food tray for some meals.  There is no evidence of any systemic, regular or deliberate failure to provide Walker with soft food while the order was in place.  Unintentional delays in providing soft food ASAP, and the possibility that the kitchen mistakenly might have sent some chewier food to Walker does not amount to deliberate indifference to Walker's serious dental needs.  Prison officials are expected to act responsibly under the circumstances, but they are not required to act flawlessly. *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008).  Therefore, defendant Bennett is entitled to judgment in his favor.

3.  The Nurses

Walker contends that nurses Ketarkus, Johnson and Van were deliberately indifferent to his serious medical need because they did not provide him an immediate dental appointment when he reported his concerns about infection and his adverse reaction to the Vicodin.  The facts do not support Walker's contentions.

When Walker reported his concerns to Vana and Johnson on September 23, 2009, they relayed them to the health services unit.  One day later, Walker's pain medication was changed and two days later he was reexamined by a dentist.  When Ketarkus was advised of Walker's complaints of pain and nausea on September 23, 2009, he advised Walker to drink small sips of water and lie down for his nausea.  Walker has presented no evidence that the decisions by the nurses amounted to deliberate indifference.  Rather, he merely disagrees with the course of action that they took, thinking they should have been more aggressive and proactive.  But the

9

nurses responded in some fashion to every request Walker made and they seemed to respond with the speed suggested by the nature of Walker's complaints, which given the nature of the dental procedure he had undergone, were fairly routine. This is not meant to be dismissive of Walker's distress but to note, as CCI staff did for Walker at the time, that after a tooth extraction this invasive, he had to expect and deal with a period of discomfort and inconvenience. There is no evidence that would support an inference that any of the nurses intentionally denied, delayed or interfered with Walker's prescribed treatment, *see Rodriguez v. Plymouth ambulance Service*, 577 F.3d 816, 829 (7th Cir. 2009), or that any arguable failure to respond to Walker's complaints as quickly and strenuously as he demanded was malicious or the result of willful ignorance of Walker's condition and actual needs. *See Knight v. Wiseman*, 590 F.3d 458, 466-67 (7th Cir. 2009). Therefore, nurses Ketarkus, Johnson and Vana are entitled to judgment in their favor on Walker's Eighth Amendment claim.

4. Correctional Officers

Walker contends that defendant correctional officers Armson, Trimble and Neumaier were deliberately indifferent to his dental issues. Walker must present evidence showing something approaching a total unconcern by the officers for Walker's welfare in the face of serious risks, evidence suggesting that any officer intentionally disregarded a known risk to Walker's dental health. *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). The officers, knowing of Walker's pain and distress, were not required to take perfect action, or even reasonable action; only reckless action would establish an Eighth Amendment violation. *Id.* The gist of Walker's complaint against the officers is that they should have immediately taken him

10

to a dentist when he complained of pain. The officers were not qualified to diagnose the nature or seriousness of Walker's dental pain; that was a decision for the HSU and the dentists. So, in response to Walker's complaints, the officers told him to file a dental services request, and then they orally conveyed Walker's concerns to HSU staff and relayed the response back to Walker. When Walker expressed concern about the food he was receiving, the officers checked with food services. In short, the evidence suggests that all of the defendant officers responded appropriately to Walker's dental condition; certainly none of them was deliberately indifferent. Therefore, defendants Armson Trimble and Neumaier are entitled to judgment on Walker's claim.

## ORDER

IT IS ORDERED that:

1. Plaintiff Lamont Walker's motion for summary judgment, dkt, # 65 , is DENIED.

2. Defendants' motions for summary judgment, dkt. ##77 and 97, are GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered this 1st day of July, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge